Julian Burns King (Bar No. 298617)
julian@kingsiegel.com
Elliot J. Siegel (Bar No. 286798)
elliot@kingsiegel.com
**KING & SIEGEL LLP**
724 S. Spring Street, Ste. 201
Los Angeles, California 90014
*tel:*   (213) 465-4802
*fax:*   (213) 465-4803

Attorneys for Plaintiff Sarah Frazier

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH FRAZIER, an individual, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | 1) **Harassment in Violation of FEHA;** |
| | 2) **Retaliation in Violation of FEHA;** |
| ULTA BEAUTY INC., F/K/A Ulta Salon, Cosmetics & Fragrance, Inc., a Delaware corporation; and DOES 1-10, inclusive, | 3) **Failure to Prevent Harassment, Discrimination, and/or Retaliation in Violation of FEHA; and** |
| Defendants. | 4) **Violation of the Bane Act;** |
| | 5) **Failure to Accommodate Victim of Stalking in Violation of Lab. Code § 230;** |
| | 6) **Wrongful Termination in Violation of Public Policy** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Sarah Frazier, by and through her attorneys, hereby complains and alleges as follows:

### INTRODUCTION

1.      Plaintiff Sarah Frazier, who is mixed-race but identifies as Caucasian, was hired as a retail store manager at the Ulta Beauty retail store located at 147 Plaza Dr, Vallejo, CA 94591 (the "Vallejo Store") over a then-current Ulta employee, Shalyce Beck, who identifies as Black. From the moment Ms. Frazier was hired, Ms. Beck repeatedly expressed her opinion that Ms. Frazier was only hired "because she was white" and immediately embarked on a campaign of racial harassment against Ms. Frazier, frequently calling her a "ghetto ass white bitch" who was "trying to be Black" and inciting racially-based altercations with Ms. Frazier.

2.      Ulta's management was well aware of Ms. Beck's harassment. Ms. Frazier raised concerns about Ms. Beck's harassment with numerous Store and District-level managers, but Ulta did nothing to protect Ms. Frazier.

3.      Ms. Beck was ultimately fired for violating the rules of a product promotion (essentially stealing merchandise by "giving away" extra free lipsticks to family members). Ms. Frazier was a witness to this misconduct and Ms. Beck blamed Ms. Frazier for her termination, further deepening her hostility towards Ms. Frazier. Ms. Frazier's managers also blamed her for raising concerns with corporate management and began to harass and retaliate against her.

4.      Ms. Beck began to stalk Ms. Frazier and threaten violence against her, causing Ms. Frazier and her family to contact the police multiples times to report stalking and threats by Ms. Beck. Ms. Beck vandalized Ms. Frazier's childhood home in Fairfield—the address on her Ulta loyalty membership, accessible to Ulta employees—and stalked Ms. Frazier at the Vallejo Store.

5.      Once again, Ms. Frazier repeatedly asked her supervisors for protection against Ms. Beck but they did nothing. Illustrating their lack of concern for Ms. Frazier's safety, the *only* accommodation they offered was permitting her to wear tennis shoes to work, in the

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

words of her manager so that she could "run" from Ms. Beck if needed.

6.     Adding insult to injury, when Ms. Frazier informed her supervisors that Ms. Beck's harassment and stalking had led her to be diagnosed with anxiety, the supervisors shared her confidential medical information with the other store employees, further humiliating Ms. Frazier.

7.     Faced with the threats of violence from Ms. Beck, the hostility of her supervisors, and reduction of her hours, Ms. Frazier was forced to resign.

## **PARTIES**

8.     Plaintiff Sarah Frazier ("Plaintiff" or "Ms. Frazier") is a 24-year-old native of Fairfield, California. Although Ms. Frazier generally identifies as Caucasian, she is of mixed racial heritage and her father's family hails from Mexico. She has been dating her boyfriend, a mixed-race man who identifies as Black, since 2015.

9.     Ms. Frazier worked for Ulta from May 3, 2018 to October 24, 2019, first as a full-time Retail Sales Manager and later, following the events described below, as a part-time Prestige Beauty Consultant. She was paid $19.00 per hour as a Retail Sales Manager and $14.29 per hour as a Prestige Beauty Consultant. She was classified as a non-exempt employee at all times during her employment at Ulta.

10.     Defendant Ulta Beauty Inc., F/K/A Ulta Salon, Cosmetics & Fragrance, Inc., ("Ulta") is a Delaware corporation with its principal place of business at 1000 Remington Blvd STE 120 Bolingbrook, IL 60440.  Defendant Ulta operated a retail store at 147 Plaza Dr, Vallejo, CA 94591 (the "Vallejo Store").

11.     Plaintiff is not aware of the names and true identities of defendants Does 1-10. Plaintiff reserves the right to amend this complaint to allege their true names and capacities when this information is available. Each Doe defendant is responsible for the damages alleged pursuant to each of the causes of action asserted, either through its own conduct, or vicariously through the conduct of others. All further references in this complaint to any of the named Defendants includes the fictitiously named defendants.

12.     At all times alleged herein, each Defendant was an agent, servant, joint

2

employer, employee, partner, and/or joint venture of every other Defendant and was acting within the scope of the Defendants' relationship. Moreover, the conduct of every Defendant was ratified by each other Defendant.

## VENUE AND JURISDICTION

13.     This Court has jurisdiction over all causes of action in this complaint pursuant to 28 U.S.C. 1332(a) because this action is between citizens of different states and the matter in controversy exceeds $75,000.

14.     This Court has personal jurisdiction over Defendants because Defendants conduct business in Solano County or have caused injuries in Solano County and State of California through their acts, and by their violation of the California Fair Employment and Housing Act, the California Labor Code, and California common law, and this action arises out of those acts.

15.     Venue is proper in Eastern District of California because Defendants do business in the District, because the Plaintiff worked for Defendants and earned wages in the District, and because a substantial part of the events giving rise to Plaintiff's claims occurred in the District.

## FACTUAL ALLEGATIONS

### Ulta Hires Ms. Frazier

16.     One day in early 2018, Ms. Frazier was working a shift as an Assistant Manager at the Skechers in Gateway Plaza when she provided customer service to Jennifer Artz, the Salon Manager at Ulta's Vallejo Store. Ms. Artz, who was attempting to return shoes and was impressed with Ms. Frazier's customer service, asked Ms. Frazier if she was interested in applying for a position at Ulta. Ms. Frazier explained that yes, she was interested; Skechers had recently eliminated certain performance-based incentives and Ms. Frazier was feeling stagnant there and looking for the potential of greater upward mobility.

17.     At Ms. Artz's behest, Ms. Frazier applied to work at the Vallejo Store. She was called in for an interview with the General Manager, Tonja Springer, which lasted approximately an hour and a half and was attended at various points by Antera Rhone, then a Clinique

freelancer, and Ms. Artz.

18.    Ms. Frazier was on vacation in New York when Ms. Springer called her to follow up about her interest in the Retail Sales Manager position. She mentioned that Ulta had interviewed numerous other candidates, including candidates for internal promotions from the Vallejo Store.

19.    Ms. Frazier was offered the position several weeks later, with a start date of May 3, 2018. Unbeknownst to her, Ulta had previously trained another, then-current employee for the Retail Sales Manager position: Shalyce Beck, a vindictive Lancôme Consultant with a history of aggressive conduct towards other Ulta employees.

20.    On her first day of work at Ulta, Ms. Frazier asked Ms. Springer if Ms. Beck had applied for the Retail Sales Manager position because Ms. Beck was acting strangely. Ms. Springer confirmed that Ms. Beck had, in fact, applied for the promotion, but didn't get it because she was "bad with people." Ms. Springer told Ms. Frazier that Ms. Beck had animosity towards her white colleagues and had a history of instigating racially charged conflict with white co-workers and managers.

**Ms. Frazier Is Subjected to Pervasive and Severe**

**Racial Harassment by her Co-Worker Ms. Beck**

21.    Consistent with her history of conflict with her white colleagues, Ms. Beck was convinced that Ms. Frazier had been hired for the Retail Sales Manager position "*because [she] is white*," and she began to harass Ms. Frazier with racial vulgarities and accusations almost immediately.

22.    For example, during one shift shortly into her time at Ulta, Ms. Frazier and another manager, Mr. Galloway Howard were casually discussing DNA tests advertised by Ancestry.com. Ms. Beck overheard the conversation and chimed in, "hey Chris, if you did an ancestry test, you'd just find out your ancestors were a bunch of slaveowners." She looked at Ms. Frazier and, after a pause, said, "you too." Ms. Frazier explained that her family was mostly from Europe and she didn't know of any slaveowners. Ms. Beck dismissed this statement and said, "you know you all were slaveowners," continuing, "that's why you should

4

pay for what you did to my people." This conversation continued for several minutes before Ms. Frazier and Mr. Galloway Howard were able to change the subject.

23.     In another incident, Ms. Frazier was eating lunch in her car when someone stole the car parked next to her. Ms. Frazier spoke with the police about the incident and said that she had tried to leave the car when the thief bumped her door in his rush to drive off, but had missed him because she was cleaning her hands after eating her lunch. Ms. Beck loudly declared that Ms. Frazier was "*hella ghetto*" for trying to approach the thief, but Ms. Frazier's pause to clean her hands was "*so white*."

24.     When Ms. Beck learned that Ms. Frazier was dating a man who appeared to be black, Ms. Beck was shocked and annoyed that Ms. Frazier was "*dating a brotha*." Ms. Frazier explained that her boyfriend was mixed-race and was black, white, and Filipino, but Ms. Beck continued to comment that she never would have thought Ms. Frazier would date a "*brotha*."

25.     These two themes, that Ms. Frazier was a "ghetto white bitch" who "wanted to be Black" became a regular staple in Ms. Beck's harassment.

26.     For example, when Ms. Frazier wore her hair in French braids, Ms. Beck accused Ms. Frazier of "trying to be Black" and persistently hounded Ms. Frazier about her braids for the rest of her shift. Ms. Frazier attempted to diffuse this harassment by explaining that they were just French braids and she wasn't trying to steal Black hairstyles—she was just too busy to style her hair that day.

27.     Ms. Beck fixated on Ms. Frazier's French braids in complaining about her to the rest of the Vallejo Store. For instance, she told Delayna Powell that Ms. Frazier culturally appropriated because she wore braids. She used Ms. Frazier's French braids as an example when explaining why Ms. Frazier was "trying to be Black" or was a "ghetto white bitch."

28.     The harassment did not stop and Ms. Beck subjected Ms. Frazier to near-daily harassment regarding her race.

29.     During a MAC lipstick event in July 2018, Ms. Frazier noticed that Ms. Beck was giving out extra free samples to her family members in violation of store policy.  When Ms. Frazier confronted Ms. Beck about the free samples, she responded with hostility.

30.    The same day, Ms. Frazier intervened to stop Ms. Beck and another employee from violently grabbing products from the hands of several unsupervised children in the store. When the angry parents confronted Ms. Beck, Ms. Frazier stepped in to de-escalate the situation and persuaded the parents to leave.

31.    Following the incident, Ms. Beck recounted the incident to numerous employees, falsely claiming that the parents called Ms. Frazier a "ghetto white bitch" and had come inside to "beat her ass." Ms. Frazier overheard this and told Ms. Beck to stop, that these were lies. But Ms. Beck doubled down and spent the rest of the shift telling other employees that Ms. Frazier was just a "ghetto white bitch" who "wanted to be Black so bad" including having "wannabe Black girl hair" (referring to the time Ms. Frazier wore her hair in braids).

**Ulta's Management Knew of Ms. Beck's Harassment and Did Nothing**

32.    Not only were Ms. Springer and Mr. Galloway Howard aware of Ms. Beck's prior history of racial invective, Ms. Springer directly witnessed many of these interactions and Ms. Frazier reported many of her negative experiences with Ms. Beck when Ms. Springer did not personally witness them.

33.    When Ms. Springer did finally take action against Ms. Beck, it was in response to allegations that Ms. Beck had given away too much free lipstick to members of her family — *not* her constant harassment of Ms. Frazier.  After she learned that Ms. Beck had given away extra free lipstick, Ms. Springer indicated that it was grounds for termination and said that she would "turn it over" to Carolyn Mannick from Loss Prevention.

34.    In early August, Carolyn Mannick called the Vallejo Store to discuss Ms. Beck's conduct. Ms. Mannick spoke with Ms. Frazier, who explained that Ms. Beck had repeatedly harassed her and had always been angry that Ms. Frazier was hired as Retail Sales Manager.

35.    Ms. Mannick expressed concern and said this conduct was unacceptable. She asked Ms. Frazier why Ms. Springer and Mr. Galloway Howard hadn't notified anyone about Ms. Beck's harassment. Ms. Frazier explained that she had no insight into whether Ms. Springer and Mr. Galloway Howard had discussed Ms. Beck's harassment with anyone at

corporate, but it was possible that they were afraid of Ms. Beck or intimidated by her threats of internal complaints. Ms. Mannick apologized and said that she would be in the Store to terminate Ms. Beck within a week.

### Ms. Beck Is Fired and Ms. Springer Retaliates

36.     Ms. Beck was terminated shortly thereafter. No one discussed her termination with Ms. Frazier, who learned of it when Ms. Beck was removed from the schedule.

37.     However, it immediately became apparent that Ms. Springer was angry with Ms. Frazier for making her look bad to corporate: both Ms. Springer and Mr. Galloway Howard ignored Ms. Frazier at work, and Ms. Frazier learned that Mr. Galloway Howard was referring to her as the "new [name redacted]"—referring to another employee at the Vallejo Store who complained of harassment—which made her break down in tears. In the office, Ms. Springer asked Ms. Frazier what her "*problem was.*" Ms. Frazier apologized for "*whatever it is that I did to be treated this way.*" Ms. Springer retorted, "*You know what you did,*" before elaborating that Ms. Frazier shouldn't have told "HR" that she and Mr. Galloway Howard failed to stop Ms. Beck's bullying.

38.     After this, Ms. Frazier reasonably feared calling corporate with any of her increasingly numerous and grave concerns. At the time, she hoped that Ms. Beck's departure would be a clean slate and allow her to move up at the Vallejo Store and within the Ulta organization.

### Ms. Beck Stalks and Threatens Ms. Frazier and Ulta Does Nothing

39.     Following Ms. Beck's termination, she began to stalk, threaten, and intimidate Ms. Frazier to the extent that Ms. Frazier and her family made several separate police calls about her, two of which were shared with Ms. Springer, who did nothing about them.

40.     In late September 2018 at approximately 8:00 p.m., Ms. Frazier received a phone call from a blocked number. The voice sounded like Ms. Beck and implausibly claimed to be a representative from Ulta's Human Resources Department investigating allegations of misconduct by Ms. Frazier at work. Ms. Frazier sensibly said that she knew the caller wasn't from HR because they called from a blocked number at 8:00 p.m. at night. The caller said,

"*Okay bitch, since we're keeping it real, I think you're a pussy ass bitch who runs her mouth, and I'm gonna run up on you at work and kill you bitch.*" The caller then hung up.

41.     Ms. Frazier immediately called Ms. Springer's cell phone and described what had just happened. Ms. Springer said she agreed that it sounded like Ms. Beck was the caller, and advised Ms. Frazier to call the police. She also said that she would immediately call Ms. Mannick to report Ms. Beck's harassment.

42.     After her call with Ms. Springer, Ms. Frazier called the Suisun City Police Department, who sent an officer to her house.

43.     On October 12, 2018, Ms. Frazier's mother called her to tell her that her childhood home—the address Ms. Frazier used in some Ulta-related paperwork—had been vandalized. Neighbors reported seeing four women parked in a PT Cruiser that the neighbors had previously seen cruising the neighborhood. The women had broken Ms. Frazier's mother's rear car window; had crushed eggs and glass plates on her car; and scattered flour across the lawn. Ms. Frazier's mother filed a formal report with the Fairfield Police Department. Afterwards, Ms. Frazier located photographs of Ms. Beck on social media. The neighbors recognized Ms. Beck and two of her sisters as three of the women who were in the PT Cruiser.

44.     On October 22, 2018, Ms. Frazier received a text from an anonymous texting website stating, "*Hey Sarah where tf [the fuck] my money at?*" Ms. Frazier did not reply.

45.     On November 21, 2018, Ms. Frazier received a phone call from an Ulta employee saying that Ms. Beck was loitering at the Vallejo Store and looking for Ms. Frazier. She told one of Ms. Frazier's co-workers, "*Yeah, I made sure I scoped the parking lot for Sarah's car,*" continuing, "*I came in looking around to see if she's here, lucky she isn't, because when I see her it's on sight*" (meaning she would fight Ms. Frazier if she saw her).

46.     Ms. Frazier called Ms. Mannick and, after explaining what had happened, asked her to ban Ms. Beck from the Vallejo Store. Ms. Mannick refused, saying that, because Ms. Beck "*wasn't trespassing,*" there was nothing she could do. Ms. Frazier also discussed Ms. Beck's stalking at Ulta with Ms. Springer, who agreed that Ms. Frazier could wear tennis

shoes in case she had to "*run*" from Ms. Beck while working.

47.     On December 2, 2018, Ms. Beck again visited the Vallejo Store, this time while Ms. Frazier was working. She entered the Store screaming for Mr. Galloway Howard. Ms. Frazier excused herself for a meal break to avoid Ms. Beck, but not before Ms. Beck saw her and glared at her. When Ms. Frazier returned from her break, Ms. Beck continued to glare across the Store at Ms. Frazier with such intensity that Ms. Springer later said, "*I think she would've assaulted you if I wasn't here.*"

48.     The next day, December 3, 2018, Ms. Frazier was not scheduled to work, although she often worked closing shifts. An Ulta employee was closing the Store when she saw Ms. Beck and several friends in the Ulta parking lot, loitering in a parked car. The employee told Ms. Frazier that she thought Ms. Beck may have been waiting around to attack Ms. Frazier. This incident was reported to Ms. Springer, who yet again did nothing.

**Ulta Retaliates Against Ms. Frazier and Constructively Discharges Her**

49.     Ms. Springer refused to take any real action to protect Ms. Frazier from Ms. Beck's increasingly threatening behavior because she was mad at Ms. Frazier for going over her head and reporting Ms. Beck's conduct to Ms. Mannick. Over months of escalating verbal harassment and criminal threats, Ms. Springer did precisely two things to help Ms. Frazier: she allowed Ms. Frazier to report late to work on November 21, 2018, and she let Ms. Frazier wear sneakers so she could "*run*" from Ms. Beck throughout December 2018. She refused to ban Ms. Beck from the Store.

50.     Ms. Springer and Mr. Galloway Howard also retaliated against Ms. Frazier by calling her names, referencing her boyfriend's race, and implying that she was cowardly to complain of Ms. Beck's harassment and stalking.

51.     Additionally, Ms. Springer demoted Ms. Frazier from Retail Store Manager to a part time job as a Prestige Beauty Consultant.  Along with the demotion, Ms. Springer cut Ms. Frazier's hours and pay.

52.     Finally, when Ms. Frazier confided to Ms. Springer that she had been diagnosed with anxiety due to these events, Ms. Springer disclosed her diagnosis to the entire

1  Store.

2     53.    Ms. Frazier was so uncomfortable at work after Ms. Springer and Mr. Galloway

3  Howard's ongoing mistreatment and retaliation that she had no real choice but to resign. She

4  submitted her resignation effective October 24, 2019.

5              **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6     54.    Ms. Frazier has met all administration exhaustion requirements by obtaining a

7  right to sue letter from the California Department of Fair Employment and Housing

8  ("DFEH"). **Exhibit A**.

9                        **FIRST CAUSE OF ACTION**

10                        **RACIAL HARASSMENT**

11                        **IN VIOLATION OF FEHA**

12                   **(Cal. Gov't Code § 12940 *et seq*.)**

13                   **(Plaintiff Against All Defendants)**

14     55.    Plaintiff repeats and incorporates by reference all allegations contained in the

15  preceding paragraphs as if fully set forth herein.

16     56.    Defendants are employers in the State of California, within the meaning of the

17  Fair Employment and Housing Act ("FEHA"), Gov't Code § 12926.

18     57.    At all relevant times herein, Plaintiff was an employee of Defendants within the

19  meaning of Gov't Code § 12926, and at all times during her employment performed her es-

20  sential job duties in a competent, satisfactory manner.

21     58.    As alleged herein and in violation of FEHA, Gov't Code § 12940, Plaintiff's

22  race and/or perceived race and/or her relationship with a man who appeared to be Black was

23  a substantial motivating reason for Ms. Beck's harassment of Plaintiff.

24     59.    Ms. Beck's harassment was both severe and pervasive. It began the first day of

25  Ms. Frazier's employment and continued even after Ms. Beck was terminated.

26     60.    Plaintiff considered her work environment to be hostile, intimidating, offensive,

27  oppressive, and abusive.

28     61.    Plaintiff's supervisor, Ms. Springer, as well as other management level

King & Siegel ‖ LLP

employees at the store were aware of the conduct and did not take immediate or appropriate corrective action.

62.     Plaintiff filed a timely complaint of discrimination against Defendant with the DFEH, which issued a right-to-sue notice to Plaintiff authorizing this lawsuit. Plaintiff has therefore exhausted her administrative remedies.

63.     As a direct and proximate result of the violation of her rights under FEHA, Plaintiff has suffered and will continue to suffer general damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

64.     As a direct and proximate result of Defendants' violation of her rights under FEHA, Plaintiff has suffered and will continue to suffer financial losses, including a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to special damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

65.     As a further, direct and proximate result of Defendants' violation of Gov't Code § 12900 *et seq.*, as heretofore described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of her employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to her. Plaintiff therefore requests that attorneys' fees be awarded pursuant to Gov't Code § 12965.

66.     Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of Defendants described above was done with malice, fraud, and oppression and with conscious disregard for her rights and with the intent, design, and purpose of injuring her. By reasons thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof at trial.

## SECOND CAUSE OF ACTION

### RETALIATION IN VIOLATION OF FEHA

### (Cal. Gov't Code § 12940 *et seq.* )

### (Plaintiff Against All Defendants)

67.     Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

68.     Defendants are employers in the State of California, within the meaning of FEHA, Gov't Code § 12926.

69.     At all relevant times herein, Plaintiff was an employee of Defendants within the meaning of Gov't Code § 12926.

70.     Plaintiff engaged in protected activity by requesting that her supervisors protect her from Ms. Beck's harassment, and later, that her supervisors provide her with accommodation as a victim of Ms. Beck's stalking.

71.     Defendants subjected Plaintiff to retaliation for engaging in protected activity in violation of FEHA, including, but not limited to, demoting her from Retail Sales Manager to Prestige Beauty Consultant, reducing her hours, harassing Plaintiff for making reports to management, and disclosing Plaintiff's private medical information to other store employees.

72.     Plaintiff's protected activity was a substantial motivating factor in Defendants' retaliation.

73.     Plaintiff filed a timely complaint of retaliation against Defendants with the DFEH, which issued a right-to-sue notice to Plaintiff authorizing this lawsuit. Plaintiff has therefore exhausted her administrative remedies.

74.     As a direct and proximate result of the violation of her rights under FEHA, Plaintiff has suffered and will continue to suffer general damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

75.     As a direct and proximate result of Defendants' violation of her rights under FEHA, Plaintiff has suffered and will continue to suffer financial losses, including a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to

special damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

76.     As a further, direct and proximate result of Defendants' violation of Gov't Code § 12940 *et seq.*, as heretofore described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of her employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to her. Plaintiff therefore requests that attorneys' fees be awarded pursuant to Gov't Code § 12965.

77.     Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of Defendant described above was done with malice, fraud, and oppression and with conscious disregard for her rights and with the intent, design, and purpose of injuring her. By reasons thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof at trial.

### THIRD CAUSE OF ACTION

### FAILURE TO PREVENT HARASSMENT, DISCRIMINATION, AND/OR RETALIATION IN VIOLATION OF FEHA

### (Cal. Gov't Code § 12940 *et seq.*)

### (Plaintiff Against All Defendants)

78.     Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

79.     Defendants are employers in the State of California, within the meaning of FEHA, Gov't Code § 12926.

80.     At all relevant times herein, Plaintiff was an employee of Defendants within the meaning of Gov't Code § 12926.

81.     Plaintiff was subjected to discrimination and/or retaliation in violation of FEHA, Gov't Code § 12940 *et seq.*

82.     Section 12940(k) of FEHA separately provides for liability against an employer if it "fail[s] to take all reasonable steps necessary to prevent discrimination and harassment

King & Siegel LLP

from occurring."

83.     Defendants, through their managing agents and supervisors, should have but did not take all reasonable steps to prevent discrimination and/or retaliation.

84.     Plaintiff filed a timely complaint against Defendants with the DFEH, which issued a right-to-sue notice to Plaintiff authorizing this lawsuit. Plaintiff has therefore exhausted her administrative remedies.

85.     As a direct and proximate result of the violation of her rights under FEHA, Plaintiff has suffered and will continue to suffer general damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

86.     As a direct and proximate result of Defendants' violation of her rights under FEHA, Plaintiff has suffered and will continue to suffer financial losses, including a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to special damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

87.     As a further, direct and proximate result of Defendants' violation of Gov't Code § 12940 *et seq.*, as heretofore described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of her employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to her. Plaintiff therefore requests that attorneys' fees be awarded pursuant to Gov't Code § 12965.

88.     Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of Defendant described above was done with malice, fraud, and oppression and with conscious disregard for her rights and with the intent, design, and purpose of injuring her. By reasons thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof at trial.

# FOURTH CAUSE OF ACTION

## VIOLATION OF THE BANE ACT

### (Cal. Civ. Code § 52.1)

### (Plaintiff Against All Defendants)

89.     Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

90.     To prevail on a claim under California's Bane Civil Rights Act ("Bane Act"), Civ. Code § 52.1, a plaintiff must prove that "the defendant, by the specified improper means (i.e., 'threats, intimidation, or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 883 (2007). An employer may be held vicariously liable for a violation of § 52.1 against another employee. *See Farmers Ins. Grp. v. Cty. of Santa Clara*, 11 Cal. 4th 992, 1005 (1995).

91.     Ms. Beck's threats caused Plaintiff to reasonably believe that if she exercised her rights to associate with personnel at the Vallejo store or her right to pursue gainful employment, Ms. Beck would commit violence against her.

92.     Ms. Beck had the apparent ability to carry out these threats.

93.     As a direct and proximate result of the violation of her rights under the Bane Act, Plaintiff has suffered and will continue to suffer general damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

94.     Pursuant to Civil Code § 52, Plaintiff is entitled to up to three times the amount of actual damages that she suffered.

95.     As a further, direct and proximate result of Defendants' violation of the Bane Act as heretofore described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the rights protected by the Bane Act, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to her. Plaintiff therefore requests that attorneys' fees be awarded pursuant to Civil Code §52.

96.     Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of Defendant described above was done with malice, fraud, and oppression and with conscious disregard for her rights and with the intent, design, and purpose of injuring her. By reasons thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof at trial.

## FIFTH CAUSE OF ACTION

### FAILURE TO ACCOMMODATE A VICTIM OF STALKING

### (Cal. Lab. Code § 230)

### (Plaintiff Against All Defendants)

97.     Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

98.     Plaintiff was a victim of stalking as set forth herein.

99.     Ms. Springer and other employees knew that Plaintiff was a victim of stalking by Ms. Beck.

100.    Ms. Frazier requested that Ulta provide her with reasonable accommodations to protect her from Ms. Beck's stalking, but Ulta did not adequately protect Plaintiff, as evidenced by the fact that Ms. Beck continued to show up at the Vallejo Store to seek out Ms. Frazier.

101.    As a direct and proximate result of the violation of her rights under Section 230 of the Labor Code, Plaintiff has suffered and will continue to suffer general damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

102.    Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of Defendant described above was done with malice, fraud, and oppression and with conscious disregard for her rights and with the intent, design, and purpose of injuring her. By reasons thereof, Plaintiff is entitled to punitive or exemplary damages from Defendant in a sum according to proof at trial.

## SIXTH CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (Plaintiff Against All Defendants)

103.    Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

104.    As set forth herein, Defendant wrongfully terminated Plaintiff's employment in violation of various fundamental public policies of the United States and the State of California. These fundamental public policies are embodied in the FEHA, the Labor Code, and the Civil Code, among others.

105.    As a direct and proximate result of the acts and conduct of Defendants, Plaintiff has suffered and will continue to suffer general damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

106.    As a further, direct and proximate result of the acts and conduct of Defendants, Plaintiff has suffered and will continue to suffer financial losses, including a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to special damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

107.    Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of Defendant described above was done with malice, fraud, and oppression and with conscious disregard for her rights and with the intent, design, and purpose of injuring her. By reasons thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in a sum according to proof at trial.

## DEMAND FOR JURY TRIAL

Pursuant to California Code of Civil Procedure section 631, Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment be entered in her favor and against Defendants as follows:

1.   General and compensatory damages, including prejudgment interest, in an amount according to proof;

2.   Punitive damages in an amount according to proof;

3.   Attorneys' fees pursuant to statute, including, but not limited to, Government Code § 12965(b) and Civil Code § 52;

4.   Costs of suit incurred herein;

5.   Applicable statutory and civil penalties;

6.   Injunctive relief; and

7.   Such other and further relief as the Court may deem just and proper.

Dated: August 11, 2020

Respectfully submitted,

**KING & SIEGEL LLP**

By: _Julian Burns King_

Julian Burns King
Attorney for Plaintiff Sarah Frazier

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

# Exhibit A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

April 15, 2020

Julian Burns King
724 S. Spring Street, Ste. 201
Los Angeles, CA 90014

RE:   **Notice to Complainant's Attorney**
DFEH Matter Number: 202004-09927215
Right to Sue: Frazier / ULTA SALON, COSMETICS & FRAGRANCE, INC. et al.

Dear Julian Burns King:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

April 15, 2020

RE:     **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 202004-09927215
Right to Sue: Frazier / ULTA SALON, COSMETICS & FRAGRANCE, INC. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

KEVIN KISH, DIRECTOR

April 15, 2020

Sarah Frazier
,

RE:    **Notice of Case Closure and Right to Sue**
       DFEH Matter Number: 202004-09927215
       Right to Sue: Frazier / ULTA SALON, COSMETICS & FRAGRANCE, INC. et al.

Dear Sarah Frazier,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective April 15, 2020 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**

Sarah Frazier

DFEH No. 202004-09927215

                              Complainant,

vs.

ULTA SALON, COSMETICS & FRAGRANCE,
INC.
1000 Remington Blvd., Ste. 210
Bolingbrook, Illinois 60440

ULTA BEAUTY, INC.
1000 Remington Blvd., Ste. 210
Bolingbrook, Illinois 60440

                              Respondents

_____

1. Respondent **ULTA SALON, COSMETICS & FRAGRANCE, INC.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Sarah Frazier**, resides in the City of  State of **.**

3. Complainant alleges that on or about **October 24, 2019**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's race, disability (physical or mental).

**Complainant was discriminated against** because of complainant's race, disability (physical or mental) and as a result of the discrimination was denied hire or promotion, demoted, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related

-1-

*Complaint – DFEH No. 202004-09927215*

Date Filed: April 15, 2020

accommodation, participated as a witness in a discrimination or harassment complaint and as a result was forced to quit, denied hire or promotion, denied any employment benefit or privilege, denied reasonable accommodation for a disability.

**Additional Complaint Details:** Claimant was harassed by a co-worker, Shalyce Beck, from the time of her hire through at least the end of 2018. Claimant complained about this harassment to her store management, which did nothing to stop it. When the harasser came under investigation by Loss Prevention, Claimant was interviewed by a corporate representative and disclosed the harassment she had experienced and management's inaction. After the harasser was terminated due to the Loss Prevention investigation, the harasser continued to haunt Respondent's premises and made criminal threats against Claimant. Again, Respondents did nothing to protect Claimant from this harassment.

Moreover, Respondents' store management began to retaliate against and harass Claimant for make protected complaints to corporate representatives. Claimant was diagnosed with anxiety in connection with these events and disclosed her diagnosis to her store manager when discussing store scheduling. Her store manager told everyone at the store about her diagnosis, embarrassing and harassing Claimant based on her diagnosed disability. Claimant then felt she had no choice but to resign.

-2-

*Complaint – DFEH No. 202004-09927215*

Date Filed: April 15, 2020

VERIFICATION

I, **Julian Burns King**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On April 15, 2020, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, CA**

-3-
*Complaint – DFEH No. 202004-09927215*

Date Filed: April 15, 2020