UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH FRAZIER, an individual, | No. 2:20-cv-01608-TLN |
| Plaintiff, | |
| v. | **ORDER** |
| ULTA SALON, COSMETICS & FRAGRANCE, INC., a Delaware Corporation; and DOES 1-10, | |
| Defendant. | |

This matter is before the Court on Plaintiff Sarah Frazier's ("Plaintiff") motion for summary judgment (ECF No. 27) and Defendant Ulta Salon, Cosmetics & Fragrance's ("Defendant" or "Ulta") unopposed cross motion for summary judgment (ECF No. 29). Defendant filed an opposition to Plaintiff's motion for summary judgment. (ECF No. 28.) Plaintiff filed a reply. (ECF No. 31.) For the reasons set forth below, Plaintiff's motion for summary judgment is DENIED and Defendant's cross motion for summary judgment is GRANTED.

///
///
///
///

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

    A.  <u>Undisputed Facts</u>

On or about May 4, 2018, Plaintiff began working as a Retail Sales Manager at Ulta's Vallejo, California location. (ECF No. 28-1 at 2; ECF No. 27 at 6; ECF No. 28 at 4.) As a Retail Sales Manager, Plaintiff was part of the Vallejo store's management team. (ECF No. 28-3 Byrne Decl., ¶ 7.) In her management position, Plaintiff reported to Vallejo Store's General Manager, Tonja Springer, and had management duties including supervising, directing, and coaching subordinate "beauty advisors." (ECF No. 28-2, Jenkins Decl., ¶3; ECF No. 28 at 4.) At the beginning of Plaintiff's employment, she acknowledged Ulta's anti-harassment policy and completed the California Manager and Supervisors Anti-Harassment training. (ECF No. 28-3 Byrne Decl., ¶ 7.) Ulta's anti-harassment policy states "[a]ny associate who believes they have been subjected to any form of unlawful discrimination or violation of this policy is encouraged and expected immediately to notify the Human Resources Department via the We Care Let's Talk Line (855) 478-5821 or HRcares@ulta.com." (*Id.* at ¶ 6, Ex. A.) Ulta's California Manager and Supervisors Anti-Harassment training further instructs managers to escalate certain concerns to either Loss Prevention or Human Resources, noting it is the managers' "responsibility to notify their next level manager or Human Resources after receiving a complaint or report of harassment." (ECF No. 28 at 4; ECF No. 28-3 Byrne Decl. ¶ 6, Ex. A.)

When Plaintiff began her employment with Ulta as a Sales Manager, she worked with another employee, Shay Beck ("Ms. Beck"), who worked full time on a similar schedule to Plaintiff's. (ECF No. 28-1 at 2.)[1] Ms. Beck, however, was terminated from Ulta on August 6, 2018.[2] (ECF No. 28-1 at 5; ECF No. 28 at 5.) Plaintiff left Ulta on or about October 17, 2019.

---

[1] The events that occurred between Ms. Beck and Plaintiff during Ms. Beck's employment compose a significant portion of the facts at issue in this case. Defendant alleges most all these facts are in dispute, without providing any contradicting evidence or evidence that could demonstrate a dispute of fact. (*See* ECF No. 28-1.) As discussed in more detail below, the Court finds Defendant's arguments disputing these facts largely unpersuasive.

[2] Defendant notes this fact is disputed based on inadmissible hearsay and lack of foundation grounds, however, appears to concede this fact in their opposition. (*Compare* ECF No. 28-1 at 5 "Plaintiff's alleged facts are based on inadmissible hearsay statements" *with* ECF No. 28 at 5

2

(ECF No. 28-1 at 12).[3] Since her departure from Ulta, Plaintiff continues to suffer from paranoia and anxiety, and whenever she goes to Vallejo or Fairfield, she gets anxiety. (ECF No. 28-1 at 12.)

          B.        Disputed Facts

The instant case turns almost exclusively on facts related to the following: interactions between Plaintiff and Ms. Beck; comments, and actions by Ms. Beck; as well as comments, acts, and inactions by Ulta management related to Plaintiff's dealings with Ms. Beck during Plaintiff's employment. Defendant asserts all such interactions, comments, actions, and inactions by Ms. Beck and Ulta management are disputed material facts. (*See* ECF No. 28 at 7; ECF No. 28-1.) The Court address the relevant facts and Defendant's challenges to such facts below.

As an initial matter, the Court first addresses Defendant's multitude of objections related to Plaintiff's failure to comply with Local Rule 260(a). (*See generally* ECF No. 28-1.) Local Rule 260(a) states in relevant part: "a 'Statement of Undisputed Facts' that shall enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon to establish that fact." The Court agrees that many of Plaintiff's "undisputed facts" fail to conform with this rule. (*See, e.g.*, ECF No. 27-1, Fact 2, 4, 5, 6, 8, 18.) Despite Plaintiff's failure to comply with Local Rule 260(a), the Court will consider Plaintiff's undisputed facts. However, Plaintiff is cautioned to comply with all Local Rules moving forward.

Many of the disputed facts presented by Plaintiff relate to statements made by Ms. Beck to Plaintiff, or by Ms. Beck about Plaintiff. (*See, e.g.*, ECF No. 27-1 Fact 4 (Ms. Beck calling

---

"Ms. Beck admitted to giving away eight free lipsticks. As a result of Ms. Becks admission, she was terminated for violating Ulta's loss prevention policies on August 6, 2018."). Nonetheless, the Court overrules any hearsay or lack of foundation objection related to this fact. *See* Fed. R. Evid. 801(d)(2); (ECF No. 27-2 at 95 (establishing Plaintiff's knowledge)).

[3] The events that lead to Plaintiff's resignation are a central component to some of Plaintiff's claims. Plaintiff asserts she was constructively terminated, while Defendant asserts she resigned. (ECF No. 28-1 at 12)

3

Plaintiff a "ghetto white bitch," stating Plaintiff had "want-to-be black girl hair," saying Plaintiff's ancestors were slave owners, and making comments about Plaintiff dating a "brother.") Defendant objects to the statements made by Ms. Beck to or about Plaintiff on hearsay grounds. (*See, e.g.*, ECF No. 28-5 Defendant Objections 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20, 21, 22.) Based on the record before the Court, it is clear Plaintiff is not intending to use any of the statements made by Ms. Beck to or about Plaintiff for the truth of the matter asserted. *See* Fed. R. Evid. 801(c)(2). Rather, Ms. Beck is using them as evidence of the ongoing and alleged pervasive harassment happening at her workplace. Accordingly, all of Defendant's objections to the statements made by Ms. Beck to and about Plaintiff are overruled as they are non-hearsay statements. *See Mable v. Navasota Indep. Sch. Dist.*, No. 09-CV-00123, 2010 WL 11453634, at *6 (S.D. Tex. Aug. 18, 2010), *report and recommendation adopted*, No. CV H-09-123, 2010 WL 11453631 (S.D. Tex. Sept. 2, 2010) ("Plaintiff does not present such statements as proof of their veracity, merely as evidence of harassment; thus, the statements are not hearsay and the court overrules these objections."). To the extent Defendant objects to Plaintiff's personal knowledge of these same statements, these objections are overruled as Plaintiff either heard these statements directly or was informed of these statements by someone with knowledge. (*See* ECF No. 32 Plaintiff's Response to Defendant Objections 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20, 21, 22.) This is sufficient, at this stage, to establish personal knowledge. *See* Fed. R. Evid. 602.

Other undisputed facts relate to statements and acts Plaintiff believes were made by Ms. Beck to and against Plaintiff (*see, e.g.*, ECF No. 27-1 Facts 9 (alleging Ms. Beck called Plaintiff and said "I think you're a pussy ass bitch who runs her mouth. I'm going to run up to you at work and fucking kill you, bitch"), 10, 13 (alleging Ms. Beck called Plaintiff and asked "Aye yo where's my money"), 14 (alleging Ms. Beck vandalized Plaintiff's mother's car and house").) Defendant objects to these facts as speculative and/or hearsay statements. (ECF No. 28-5 Defendant Objections 35, 36, and 37.) To the extent that Plaintiff alleges these statements were in fact made by Ms. Beck, Defendant's objections are sustained. However, the existence of the statements and the actions are admissible as circumstantial evidence of continued harassment. *Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 991-93 (E.D. Cal. 2016) (noting the use of

circumstantial evidence in FEHA claim).  Additionally, Defendant's hearsay objections are overruled as the statements are not being offered for the truth of the matter asserted.  *See* Fed. R. Evid. 801(c).

Further disputed facts include statements made to Ulta management and statements made by Ulta management to and from Plaintiff about the alleged harassment.  (*See, e.g.*, ECF No. 27-1 Facts 10, 15, 16, 18, 21.)  Defendant objects to these facts on lack of foundation and/or hearsay grounds.  (ECF No. 28-5 Defendant Objections 19, 20, 23, 26, 27, 28, 29, 31, 32, 33, 38, 39, 40, 49, 50, 51, 52, 56, 57, 58, 65.)  Defendant's objections as to hearsay are overruled as the statements are either examples of workplace harassment, are being used to establish knowledge of workplace harassment by the employer, or are statements made by an agent or employee of Defendant on a matter within the scope of that relationship.  *See Mable*, 2010 WL 11453634, at *6; *Coppola v. Smith*, No. 1:11-CV-01257-AWI, 2015 WL 224730, at *1 (E.D. Cal. Jan. 15, 2015) ("Statements that are offered to show a person's knowledge, notice or awareness, or to show the impact or effect that they had on a listener, or to show that information was received, are not offered for the truth of the matter asserted, and thus, are not hearsay.") (citing *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003); *United States v. Kirk*, 844 F.2d 660, 663 (9th Cir. 1988); *United States v. Giese*, 597 F.2d 1170, 1194 (9th Cir. 1979); *Gibbs v. State Farm Mut. Ins. Co.*, 544 F.2d 423, 428 (9th Cir. 1976).); Fed. R. Evid. 801(d)(2)(D) (defining admission by a party opponent).  Defendant's lack of foundation objections are overruled as Plaintiff established through deposition testimony that these statements were made to her, giving her direct knowledge, or were relayed to her by another employee acting in their capacity as an employee or agent and thus constitutes a party opponent. (*See* ECF No. 32 Plaintiff Responses to Defendant's Objections 19, 20, 23, 26, 27, 28, 29, 31, 32, 33, 38, 39, 40, 49, 50, 51, 52, 56, 57, 58, 65.)

Accordingly, the Court views the above "disputed facts" as undisputed, limited only by the Court's evidentiary rulings.  The Court also notes Defendant has provided no evidence, deposition or otherwise, to contradict many of these facts.  Defendant notes in the Jenkin's Declaration that both Plaintiff and Defendant have struggled to depose at least one key witness in

the case. (ECF No. 28-2.) However, the reason for Defendant's lack of evidence demonstrating a dispute cannot itself be evidence of a dispute. *Huckabee v. McGuiness*, No. 09-cv-0749-DAD-BAM, 2020 WL 916859, at *1 (E.D. Cal. Feb. 26, 2020), *aff'd*, 846 F. App'x 558 (9th Cir. 2021) (noting an opposing party must "put[] forth [] *evidence* establishing a disputed issue of material fact or creating a genuine issue for trial.") (emphasis added).

## II.    STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

6

1  the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for
2  the nonmoving party. *Id.* at 251–52.

3        In the endeavor to establish the existence of a factual dispute, the opposing party need not
4  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
5  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
6  trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is
7  to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
8  trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's
9  note on 1963 amendments).

10       In resolving the summary judgment motion, the court examines the pleadings, depositions,
11 answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed.
12 R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence
13 of the opposing party is to be believed and all reasonable inferences that may be drawn from the
14 facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S.
15 at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
16 obligation to produce a factual predicate from which the inference may be drawn. *Richards v.*
17 *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.
18 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party
19 "must do more than simply show that there is some metaphysical doubt as to the material facts."
20 *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead
21 a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at
22 587.

23       **III.**    **ANALYSIS**

24       Plaintiff moves for summary judgment as to all six of their claims, asserting there is no
25 dispute of material fact and based on the undisputed facts, Plaintiff is entitled to judgment in her
26 favor. (ECF No. 27.) Defendant opposes summary judgment, asserting many of the material
27 facts are in dispute, despite providing limited evidence in opposition. Defendant further argues in
28 the alternative, even if there were no dispute of material fact Plaintiff would still not be entitled to

relief. (ECF No. 28.) The Court addresses the parties' arguments as to each claim in turn.

### A. Claim One: Harassment in Violation of FEHA

To establish a prima facie claim for a racially hostile work environment, a plaintiff must show that: "(1) he was a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the [defendant] is liable for the harassment." *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860 at 876 (2010); *see also Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989) (requiring similar elements for a sexual harassment claim under FEHA).

As the California Supreme Court has stated, the term "harass" appears in a different FEHA section than the term "discriminate" and defines a "distinct" wrong. *Roby v. McKesson Corp.*, 47 Cal.4th 686, 705–707 (2009), *as modified* (Feb. 10, 2010) (stating that there is a "significant distinction" between "harassment and discrimination in the FEHA" (citations omitted)). Whereas "FEHA's discrimination provision addresses only explicit changes in the 'terms, conditions, or privileges of employment'" — "that is, changes involving some *official action taken by the employer*" — "harassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment . . . communicates an offensive message to the harassed employee." *Id.* at 706 (italics original). In other words, "discrimination refers to bias in the exercise of official actions on behalf of the employer," while "harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Id.* at 707.

Harassment "includes, but is not limited to, verbal epithets or derogatory comments, physical interference with freedom of movement, [and] derogatory posters or cartoons," and "consists of . . . conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63 (1996) (citations omitted); *see Roby*, 47 Cal.4th at 710–11 (recognizing "harassment claim" based on "demeaning comments, gestures, and facial expressions.").

To be actionable under FEHA, "harassment cannot be occasional, isolated, sporadic, or

trivial." *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 131 (1999) (quoted source and internal quotation marks omitted). "Rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Id.* (quoted source and internal quotation marks omitted). "Whether the harassment is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment must be assessed from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." *Thompson*, 186 Cal. App. 4th at 877 (quoting *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 263–264 (2009)) (internal quotation marks omitted); *see also id.* at 878 ("the law recognizes a cause of action for racial harassment only if the employee can demonstrate repeated, routine acts so severe or pervasive as to create an abusive environment for any reasonable person belonging to plaintiff's racial or ethnic group").

Plaintiff argues, based on the undisputed facts outlined above, namely the statements made by Ms. Beck to and about Plaintiff related to her race, are sufficient to establish her FEHA harassment claim. (ECF No. 27 at 10.) Plaintiff further argues several members of Ulta's management, including Retail Operations Manager, Chris Galloway Howard, and General Manager, Tonja Springer, and did nothing to ameliorate or remedy these issues after being informed of them. (*Id.* at 10–12.) Defendant responds first by arguing that these facts are in dispute, not by providing evidence of what refutes either these statements or managerial knowledge (e.g., no declaration or deposition transcripts that contradict or refute Plaintiff's declaration or deposition testimony), but rather by challenging the reliability and veracity of Plaintiff's evidence and testimony. (ECF No. 28 at 8.) Specifically, Defendant challenges whether the statements by Ms. Beck actually occurred, and argues the fact Plaintiff knew how to escalate matters to HR, but failed to do so here, indicates this alleged harassment may not have occurred. (*Id.*) Alternatively, Defendant argues even if there are no disputed facts, Plaintiff cannot establish liability. (*Id.* at 9–10.)

The Court finds Defendant's argument that there is a dispute of material fact to be unpersuasive. The Court thus turns to whether the undisputed facts can establish liability at summary judgement and the finds that they cannot. It is without question that the statements in

this case are concerning and at times even disturbing in nature. (*See, e.g.*, ECF No. 27-1 Fact 4 (Ms. Beck calling Plaintiff a "ghetto white bitch," stating Plaintiff had "want-to-be black girl hair," saying Plaintiff's ancestors owned slaves, and making comments about Plaintiff dating a "brother;" Facts 9 (alleging Ms. Beck called Plaintiff and said "I think you're a pussy ass bitch who runs her mouth. I'm going to run up to you at work and fucking kill you, bitch"), 10, 13 (alleging Ms. Beck called Plaintiff and asked "Aye yo where's my money"), 14 (alleging Ms. Beck vandalized Plaintiff's mother's house").) However, Plaintiff cites no case where these types of statements, made under these circumstances, during a discrete time-period (here, three months) entitles her to summary judgment. Indeed, Plaintiff's motion is devoid of any authority at all that would indicate these statements, made throughout a similar period of time by a coworker, amount to harassment sufficient to hold Defendant's liable as a matter of law under FEHA. Defendant in contrast, compares the allegations in the instant case with *Etter v. Veriflo Corp.*, where the racially intensive statements included a Caucasian female co-worker calling Etter, an African American man, "boy" almost daily, "Buckwheat" between five and ten times, and "Jemima" and "Stymie" once or twice. 67 Cal. App. 4th 457, 460 (1998), *as modified on denial of reh'g* (Nov. 16, 1998). In *Etter*, a jury found these statements do not rise to the level of harassment sufficient to sustain liability under FEHA. This case is persuasive and demonstrates that there is at least a question as to whether the conduct in the instant case can constitute harassment under FEHA.

To be clear, the Court is not saying the statements and conduct here do not establish FEHA liability. The Court is merely saying it is an open question based on the undisputed facts. Accordingly, because Plaintiff has failed to show she is entitled to relief based on the undisputed facts, summary judgement as to her first claim, harassment in violation of FEHA, is DENIED.

### B. Claim Two: Retaliation in Violation of FEHA

Under FEHA, it is unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). To establish a claim for retaliation under FEHA, Plaintiff must show: (1) she engaged in a protected activity; (2) she was subjected to an adverse

employment action; and (3) there was a causal link between the protected activity and the adverse action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). "Protected activity" means that the employee "has opposed any practices forbidden under [FEHA] . . . or has filed a complaint, testified, or assisted in any proceeding under [FEHA]." Cal. Gov. Code § 12940(h).

Analysis of the FEHA retaliation cause of action proceeds under the *McDonnell Douglas* burden-shifting framework. *Washington v. Cal. City Correction Ctr.*, 871 F. Supp. 2d 1010, 1027 (E.D. Cal. 2012); *Navarro v. DHL Glob. Forwarding*, No. 15-cv-05510-CAS, 2017 WL 901880, at *9 (C.D. Cal. Mar. 6, 2017). Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 68 (2000). If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation "drops out of the picture," and the burden shifts back to the employee to prove intentional retaliation. *Id.*

In the instant case, Plaintiff does not assert a traditional adverse employment action, e.g., termination. (ECF No. 27 at 12–13.) Plaintiff does assert she was demoted. However, the record indicates she voluntarily took a different position at Ulta after receiving a new position with a more demanding schedule at Sketchers.[4] (*See* ECF No. 28-5 Fact 17.) The thrust of Plaintiff's claim is that she was constructively discharged. (ECF No. 27 at 12–13.)

"Constructive discharge occurs when the employer's conduct effectively forces an employee to resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244 (1994). An "employee must plead and prove . . . that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Id.* at 1251. Also, the "requisite knowledge or intent must exist on the part of either the employer or those persons who effectively represent the employer, i.e., its officers, directors, managing agents, or supervisory employees." *Id.* It is an

---

[4] Viewing the facts in the light most favorable to Defendant, and for purposes of resolving the instant motion, the Court determines Plaintiff was not demoted. *See Anderson*, 477 U.S. at 255 (At summary judgment "all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.").

objective standard inquiring "whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit." *Id.* at 1248.

Plaintiff argues she is entitled to summary judgment based on constructive discharge because the managers knew of and permitted the hostile working conditions. (ECF No 27 at 12–13.) Plaintiff asserts the way management reacted, by either confirming that the statements by Ms. Beck to Plaintiff were made and doing nothing and by telling Plaintiff to wear running shoes so she could run away from Ms. Beck if needed, all created an environment that forced Plaintiff to quit. Plaintiff further argues that two managers, Tonja Springer and Chris Galloway Howard, retaliated against Plaintiff for complaining about Ms. Beck to corporate by calling her names, referencing her boyfriend's race, and by implying Plaintiff was a coward. (*Id.* at 13.) Plaintiff also alleges her hours were cut and information about her anxiety was gossiped about throughout the store. (*Id.*)

Defendant argues Plaintiff has failed to demonstrate an adverse action was taken against her and fails to establish constructive discharge. (ECF No. 28 at 11–12.) The Court agrees. As a threshold matter, "[w]hether conditions were so intolerable or aggravated under that standard is usually a question of fact" and should thus be left to the trier of fact to determine. *Scotch v. Art Inst. of California-Orange Cnty., Inc.*, 173 Cal. App. 4th 986, 1022 (2009). This is particularly true here, where the case, in large part, turns on the credibility and reliability of Plaintiff's own testimony as there is no corroborating or impeaching deposition testimony. Further, the facts currently in the record do no establish that Ulta intentionally created or knowingly permitted working conditions that were so intolerable as to force Plaintiff to quit. Indeed, Ms. Beck was terminated fourteen months prior to Plaintiff's resignation, which means the lion's share of the harassing conduct stopped 11 months before Plaintiff resigned. This begs the question, what conduct during that 11 months created the intolerable work environment and who was engaging in it? That question, perhaps, can be resolved during a trial. For the foregoing reasons, summary judgment on claim two, Retaliation in Violation of FEHA, is DENIED.

///

           C.        <u>Claim Three: Failure to Prevent Harassment, Discrimination, and/or Retaliation in Violation of FEHA</u>

An employer cannot be held liable for failing to take reasonable steps to prevent discrimination, harassment, or retaliation unless the employee establishes that she was a victim of discrimination, harassment, or retaliation. *Caldera v. Dep't of Corr. & Rehab.*, 25 Cal. App. 5th 31, 44 (2018) ("There can be no liability for an employers' failure to prevent harassment claim unless actionable harassment occurred.") (citing *Jumaane v. City of L.A.*, 241 Cal. App. 4th 1390, 1410 (2015)). Because Plaintiff is not entitled to summary judgment on her FEHA claim for harassment or retaliation, her failure to prevent claim also fails. As a result, summary judgment as to Plaintiff's third claim, Failure to Prevent Harassment, Discrimination, and/or Retaliation in Violation of FEHA, is DENIED.

           D.        <u>Claim Four: Violation of the Bane Act</u>

The Bane Act authorizes individual civil actions for damages and injunctive relief by individuals whose federal or state rights have been interfered with by threats, intimidation, or coercion. *See* Cal. Civ. Code § 52.1(a) (proscribing interference "by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state. . ."); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998) (interpreting the Bane Act's use of "interferes" to mean "violates"). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 883 (2007); *see also Doe v. State*, 8 Cal. App. 5th 832, 842, (2017), *review denied* (June 14, 2017) ("To prevail on a cause of action under Civil Code section 52.1, the plaintiff must show that the defendant interfered with or attempted to interfere with the plaintiff's legal right by threatening or committing violent acts."). A plaintiff bringing a claim pursuant to the Bane Act "must show (1) intentional interference or attempted interference with a

13

state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015), *as modified on denial of reh'g* (Mar. 6, 2015).

Plaintiff argues she is entitled to summary judgment on her Bane Act claim because "Ms. Beck's threats, detailed above, caused Plaintiff to reasonably believe that if she exercised her right to gainful employment, Ms. Beck would commit violence against her." (ECF No. 27 at 14.) Critically, the basis of this claim relates to conduct by Ms. Beck. As Defendant properly points out, at the time Ms. Beck made the alleged threatening statements to Plaintiff, or engaged in the threatening conduct (e.g., when Ms. Beck was allegedly "waiting around for Plaintiff" in a threatening manner), Ms. Beck had already been terminated as an employee. Accordingly, to the extent that anyone is liable under the Bane Act, it would be Ms. Beck personally, not Defendant. For this reason, summary judgment as to claim four, violation of the Bane Act, is DENIED.

E. Claim Five: Failure to Accommodate Victim of Stalking in Violation of Cal. Lab. Code. § 230

California Labor Code § 230 ("§ 230") prohibits employers from, among other things, discharging or retaliating against an employee because of the employee's status as a victim of crime or abuse, if the employee provides notice to the employer of the status or the employer has actual knowledge of the status. Cal. Lab. Code § 230(e). Section 230 also requires an employer to provide reasonable accommodations for a victim of domestic violence, sexual assault, or stalking who requests an accommodation for the safety of the victim while at work. *Id.* at § 230(f). An employer only has to provide reasonable accommodation if the employee discloses the status. *Id.* at § 230(f)(3). An employer may request a certification demonstrating an employee's status as a victim of domestic violence, sexual assault, or stalking. *Id.* at § 230(f)(7). Pursuant to § 230(d)(2), certification can be in the form of a police report, a court order, other evidence from a court or prosecuting attorney that the employee has appeared in court, documentation from a licensed medical professional, domestic violence counselor, sexual assault counselor, victim advocate, licensed health care provider, or counselor that the employee was undergoing treatment or receiving services for physical or mental injuries or abuse that resulted in

victimization from the crime of abuse, or any other form of documentation that reasonably verifies that the crime or abuse occurred. *Id.* at § 230(d)(2)(A)–(D).

Plaintiff argues she is entitled to summary judgment on this claim because none of her supervisors took any action to protect her in response to her repeated complaints about feeling unsafe due to Ms. Beck's continued harassment, threats, and stalking. (ECF No. 27 at 15.) In opposition, Defendant argues Plaintiff is not entitled to relief because she has not established that she is a victim of stalking by Ms. Beck. The Court agrees with Defendant.

The issues regarding this claim abound. First to obtain the protections of § 230 the employee must be a victim of domestic violence, sexual assault, or stalking. Though the statute does not define the term "victim" it does provide ways in which an individual can certify their status as a victim under § 230. Those are enumerated in § 230(d)(2) and include police reports, formal court documents or attorney records, medical records, or other verifiable documents. There are no such documents in the record in the instant case. For this reason, it is unclear if Plaintiff is a victim within the meaning of the statute. Indeed, the facts that are a part of the record raise questions as to whether Plaintiff was the victim of any crime. (*See* ECF No. 28 at 17 (citing Plaintiff's Deposition Vol. II at 24:25; 25:1–7).)

Second, even if Plaintiff could be considered a victim under § 230, it is unclear if she ever gave proper disclosure to Defendant regarding her status or actually requested an accommodation. Nowhere in Plaintiff's motion or in the record does she indicate she provided any kind of actual notice, formal or otherwise, stating that she was a victim of stalking or any other crime. Further, the record is devoid of information as to what accommodation Plaintiff requested, if any. Plaintiff does assert that she wanted Ms. Beck banned from the store, however this demand was based only on Plaintiff's *belief* that Ms. Beck threatened her — not on Plaintiff's status as a victim. (*See* ECF 28-1 Fact 10 (citing Plaintiff's Deposition Vol. I at 97:5-10 (indicating Plaintiff did not have proof the threat came from Ms. Beck).)

Without proper disclosure, this claim cannot proceed, and without an actual request based on Plaintiff's status as a victim, there can be no violation of the statute. Consequently, summary judgment as to Plaintiff's fifth claim, Failure to Accommodate Victim of Stalking in Violation of

Cal. Lab. Code. § 230, is DENIED.

F.     Claim Six: Wrongful Termination in Violation of Public Policy

A claim for wrongful termination in violation of public policy is derivative of a FEHA retaliation claim. *See Sneddon v. ABF Freight Syss.*, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007) (dismissing plaintiff's derivative cause of action for wrongful termination in violation of public policy after concluding that plaintiff had failed to state a claim as to the underlying FEHA discrimination claim); *see also Tumblin v. USA Waste of Cal., Inc.*, No.16-cv-2902 DSF, 2016 WL 3922044, at *8 (C.D. Cal. July 20, 2016) (a plaintiff failing to state a claim for age discrimination under FEHA could not state a derivative claim of wrongful termination in violation of public policy).

Because summary judgment is denied as to Plaintiff's FEHA retaliation claim, summary judgment as to Plaintiff's derivative claim of Wrongful Termination in Violation of Public Policy, is also DENIED.

G.     Defendant's Cross Motion for Summary Judgement

Defendant brings a cross motion for summary judgement to dismiss Plaintiff's claim for punitive damages. (ECF No. 29.) Defendant argues Plaintiff cannot establish that any of the alleged bad actors were "managing agents" and even if she could, Plaintiff fails to set forth any admissible evidence that these individuals engaged in any conduct that rose to the level of fraud, oppression, or malice. (*Id.* at 3.) Defendant subsequently filed a notice informing the Court that Plaintiff has agreed to stipulate to dismissal of her claim for punitive damages. (ECF No. 34.)

Based on the parties' stipulation and a review of the factual record, the Court finds there are no disputes of material fact related to Plaintiff's claim on punitive damages and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's cross motion for summary judgment is GRANTED only in so far as it dismisses Plaintiff's claims for punitive damages.

///

///

///

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED. (ECF No. 27.) Defendant's Cross Motion for Summary Judgment is GRANTED, only insofar as it dismisses Plaintiff's claims for punitive damages. (ECF No. 29.) The parties are ORDERED to file a Joint Status Report not later than thirty (30) days of the electronic filing date of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

**Date:  March 29, 2023**

Troy L. Nunley
United States District Judge